## PROPRIETORS OF SOUTH-WEST BEND BRIDGE *versus* JACOB HAHN.

If a grant of a charter be made, authorizing the building of a bridge, and there is contained in it a reservation or condition, with a view to the particular interest of an individual, such as exhibiting in view the rates of toll, he may avail himself of the omission, in defence of a suit against him to recover the penalty incurred by passing the bridge with the intent to avoid the payment of toll.

But if such grant be made on conditions which would not be for the particular benefit or accommodation of an individual, such as building the bridge in a different manner from that stipulated in the charter, the Legislature alone can interfere and inquire whether the condition has been performed; and an omission to comply strictly with the condition, cannot be set up by an individual as an excuse for his own violation of the provisions of the act.

Where one acts as toll-gatherer, and as such, demands toll of a person passing the bridge, and his acts are adopted by the corporation, such person passing the bridge, with the intent to avoid the payment of toll, cannot object in defence, that the toll-gatherer was not legally chosen or appointed.

In an action to recover such penalty, if the plaintiffs are described in their writ, as the " Pro. S. W. B. Bridge, a corporation established by law, in Lisbon, in our county of Lincoln," in which county the action is brought, such statement must be taken to be true, on the trial of the action, where the general issue only is pleaded.

THIS case came before the Court upon the following report by REDINGTON District Judge.

" Debt to recover a penalty for passing plaintiffs' bridge with intent to avoid payment of the legal toll, contrary to Rev. Stat. chap. 80, sect. 35.

" The writ and pleadings may be referred to. The cause was opened to the jury; certain questions of law arose, and the parties agree, that the Judge should report the case to the S. J. Court for their decision.

" It was proved as follows, viz: — In 1819, certain persons were incorporated by the company name aforesaid, with power to build a bridge from Lisbon to Durham, across the Androscoggin river. In the same year, the corporators with their associates accepted the charter, and were duly organized, and erected a bridge under the charter. The corporation was kept

up by the choice of officers, &c. annually until 1838, as appears by a book, proved on the trial to be the book of records of said corporation, to which book reference may be had for a copy of the charter, as well as for the doings of the corporation, down to the year 1838. The first bridge was 32 feet wide, as the charter required.

"There was a provision in the charter, that the corporation might exact tolls, on condition (among other things,) that when they should rebuild their bridge in whole or in part, it should be made 25 feet wide. The exact words of that provision and of the condition thereof, are as follows : —

"Be it further enacted, that for the purpose of reimbursing said proprietors, the moneys by them expended, or that may hereafter be expended in building and supporting said bridge, a toll be, and is hereby, granted and established for the sole benefit of said proprietors, according to the rates following, viz : (Here the rates were given.)

"And at all times when the toll-gatherer shall not attend his duty, the gate shall be left open, and the *said toll shall commence on the day of opening said bridge for passengers*, and shall continue for the benefit of said corporation forever, *provided*, that after the term of twenty years, the rate of toll shall be subject to the regulations of government. *And provided also* : — that the proprietors shall build the said bridge twenty-five feet wide, when it shall be rebuilt in the whole or in part, or at any time when the government shall so direct, and the proprietors at the place or places where the toll shall be received, shall erect and keep constantly exposed to view, a sign board with the rates of toll of all tollable articles fairly and legibly written thereon, in large or capital letters."

The charter may be referred to by either party.

The bridge went off in two or three years after it was first erected. It was rebuilt soon afterwards, but was made less than 25 feet wide. It went off again in January, 1839. Afterwards, in 1839, the corporation sold the whole franchise to Merrill & Morse, for whose use this action is brought. Mer-

rill & Morse rebuilt the bridge in 1839 or 1840, but made it less than 25 feet wide.

" Since 1838, it does not appear that any officers of the corporation have been chosen, or any meetings held.

" By an act of 1846, the corporation are exempted from building the bridge more than 22 feet wide. That act is to be made a part of the case.

" The bridge went off in 1846, before the passage of that act. Preparations had been made for rebuilding.

" About 100 feet of the bridge was carried off, about the year 1837 ; it was immediately repaired, but though the caps were made twenty-five feet long, *the travel was laid at twenty-two feet.*

" On the 29th of December, 1845, the corporation having always been in the habit of taking toll, and having a gate and a board exhibiting the rates of toll, as prescribed by law, the defendant having no peculiar exemption from the payment of toll, and at a time when the toll-gatherer was attending to his duty, passed the bridge with an intent to avoid the payment of the legal toll, though the toll was demanded of him, when within two or three rods of the gate, by the toll-gatherer.

" The following questions of law were raised by the counsel.

" The bridge being partly in the county of Lincoln, and partly in the county of Cumberland, and the defendant having passed it in the direction from Lisbon to Durham, defendant contends that the offence was not completed till defendant was in Cumberland, and that therefore, the action cannot be sustained in Lincoln. And the first question is, whether the action being brought in Lincoln, is to fail on that account.

" The second question of law is, whether the plaintiffs are precluded from recovering, because no officers appear to have been chosen, or meetings of the corporation held since the year 1838.

" The third question is, whether the action is to fail because the bridge when rebuilt was not made so much as 25 feet wide.

" The next question, is as follows : If by reason of the omission to choose corporation officers, or to hold meetings since 1838, or by reason of the bridge being rebuilt less than 25 feet in width, the plaintiffs would be precluded from recovering, would the act of 1846 remove these impediments so as to entitle plaintiffs to recover.

" If, upon the decision by the Supreme J. Court of the foregoing questions, the plaintiffs are entitled to recover, the defendant agrees to be defaulted, and that judgment be rendered against him for $5, debt, and for costs, otherwise plaintiffs agree to become nonsuit with costs for defendant.

" Asa Redington, presiding Judge."

In the writ the plaintiffs were described as the " Proprietors of the south-west bend bridge, a corporation established by law in Lisbon, in our county of Lincoln."

The general issue was pleaded and joined.

The act of 1846, referred to in the report, in addition to the act of incorporation, provides, that the fourth section of the act of incorporation " is hereby so varied and amended, as not to require the bridge to be built more than twenty-two feet wide."

*Groton*, for the plaintiffs, contended, that the report shew, that the plaintiffs had done all that was required of them by the act of incorporation so far as to enable them to take toll. The plaintiffs prescribed the rates within the limits of the charter, and the defendant has no right to pass their bridge without payment of the toll. It is for the State alone to say whether every particular has been strictly and to the letter performed. It is but a poor defence, that " the defendant wants a guage of twenty-five feet to run his toll on."

*Tallman*, for the defendant, contended : —

1. That the toll must be demanded at the toll-gate.

2. The suit cannot be maintained, because the plaintiffs have not performed the conditions on which the right to take toll depended. The corporation has no right to take toll, until they have built the bridge according to the provisions of the

charter. That is a condition precedent to the right to take toll. This is not a question, whether the defendant has a right to pass the bridge without the consent of the proprietors, but whether the plaintiffs have placed themselves in a condition to exact and recover a penàlty for passing the bridge without payment of a toll, which can only be done, by bringing themselves strictly within the provisions of the act.

The opinion of the Court, WELLS J. dissenting, was drawn up by

WHITMAN C. J. — The plaintiffs were incorporated in 1819, for the purpose of erecting and maintaining a toll bridge across the Androscoggin river, between the towns of Lisbon and Durham; and they soon after erected a bridge in conformity to the terms of their charter; and exacted and received toll, as therein provided, of those who passed the bridge, until it was carried away by a freshet. It was again rebuilt, but of a less width that twenty-five feet. It was, however, of the same width as the former. The toll provided for in the charter, was granted with sundry provisos; one of which was, that, in case the bridge should be rebuilt, in whole or in part, it should be twenty-five feet wide, the first having been authorized to be built of the width of twenty-two feet.

This was a grant of a franchise. It was accepted by the plaintiffs. The right to it vested in the grantees, subject to a condition subsequent, and not precedent. It formed a contract between the State and the plaintiffs. Although the right had vested, the State might resume it, if the plaintiffs should not perform the conditions upon which the grant was made, or should abuse the privileges granted. Had the defendant a right to pass the bridge free of toll, because the last erection was no wider than the former? Generally speaking no one but the grantor, in a case like the present, would have a right to resume a grant. He might waive the performance of a condition, or think proper to overlook a misuser of the privileges granted. If, however, the reservation or condition was with a view to the particular interest of individuals, they might

avail themselves of the breach, as in the case of there being no toll board exhibited to view, with the rates of toll on it; or the closing of the gate when no toll-gatherer was present to receive the toll. But grants are often made by the Legislature upon conditions, such as individuals, not parties to the grant, could have no right to avail themselves of. Suppose the grant in question had been made upon condition, that a certain portion of the toll should be paid into the treasury of the State, annually, and there had been an omission to comply with the condition; no individual could refuse to pay his toll, on passing over the bridge, on that account. A great variety of regulations might be introduced into a charter, which would not be for the particular accommodation of individuals, the non-observance of which would afford them no ground of complaint; or authorize them to treat the grant as inoperative. The grantor in such case would alone have authority to interfere or not at his option. A regulation, as to how wide a bridge shall be, is of this description. The defendant was not particularly interested in having the bridge built twenty-five, instead of twenty-two, feet wide. A width of twenty-two feet was sufficient for his accommodation. The Legislature so determined, and every one else could have seen that it was so, when the first bridge was built. The Legislature, doubtless, contemplated, that many years would elapse before it would become necessary to rebuild the bridge; and that, during that time, the width of twenty two feet would be amply sufficient for the accommodation of the public. It happened, however, to be but about two years before the rebuilding, by reason of a providential occurrence, became necessary. Who can believe, in such case, that the Legislature would have deemed it reasonable to hold the plaintiffs bound to rebuild, otherwise than they did, particularly, when it is seen that by an act passed in 1846, they released the plaintiffs from the liability to rebuild it more than twenty-two feet wide?

As to there having been no choice of officers, since 1838, the statement, from the court below, is, that, "on the 29th Dec. 1845, the corporation, having always been in the habit

of taking toll, and having a gate, and a board exhibiting the rates of toll, as prescribed by law, the respondent, having no particular exemption from the payment of toll, and at a time when the toll-gatherer was attending to his duty, passed the bridge, with an intent to avoid the payment of the legal toll, though the toll was demanded of him, when within two or three rods of the gate, by the toll-gatherer." The corporation, therefore, must be believed to have had a toll-gatherer, at the time the defendant passed over the bridge, and that he was present at the time and demanded the toll. Whether he was elected or appointed before or since 1838, is immaterial. It was not for the defendant to question the legality of his appointment. His agency must be believed to have had the sanction of the plaintiffs, or they would not have kept him there constantly demanding and receiving toll. Payment to him would have been a discharge to the defendant; and in fact it does not appear, that the defendant at all questioned his authority. The case finds, that he had determined to pass without paying the legal toll.

The action was properly brought in the county of Lincoln, if the statement in the writ be true. The plaintiffs, in their writ, are styled "a corporation established by law in Lisbon in our county of Lincoln." This fact is not traversed by a plea in abatement. The cause went to trial in the court below upon a plea to the merits. The statement in the writ therefore must be taken to be true. And being so to be taken the point raised, as to this matter, was not open to the defendant.

Thus we have disposed of the three first points raised, in the court below, in favor of the plaintiffs, which renders the consideration of the remaining point there raised unnecessary.

*Defendant defaulted.*

WELLS J. dissenting.

I am not satisfied with the conclusion. The bridge was *less* than 25 feet. *How much less* the case does not state. It was the bridge of 1837, which was 22 feet. It was the bridge

of 1839 or 1840 over which the defendant passed, and it was *less* than 25 feet.

The condition is *subsequent* to the act of incorporation, but *precedent* to the right of taking toll. The erection of a sign board is of course to be subsequent to the passage of the act, but precedent to the right to take toll.

The corporators, by acceptance of the charter, acquire the right to do what is granted, but if the right to take toll depends upon something to be done, after the acceptance of the charter, the thing to be done is a condition precedent. In *Fales* v. *Whiting*, 7 Pick. 225, the defendant was sued for forcibly passing the gate; a way *de facto* for 20 years, but not *lawfully* laid out. If a requisition of a general law must be a pre-requisite to taking toll, it surely must be so, if it is also required in the charter. The *location* of a gate is not of more importance, than the *width* of a bridge. But where it is located, in a place different from that prescribed in the act, assumpsit for tolls, which must have accumulated on credit, cannot be maintained. *Griffin* v. *House*, 17 Pick. 432; *People* v. *Dinslow*, 18 Johns. R. 396; 1 Caines, 180; *Commonwealth* v. *Heare*, 2 Mass. R. 102; *Nichols* v. *Bertram & al.* 3 Pick. 342.

These cases proceed upon the idea, that the *terms* of the act of incorporation must be complied with, before any right exists to take toll. Nothing is said about *conditions*. The amount of it is, the Legislature say to it, if you will do and perform certain things, you are empowered to take toll. The *power* to take toll follows the doing what is granted. If what is granted to be done is not done, the right does not accrue.

That a want of compliance, with the act of incorporation and the provisions of law, is a matter to be settled between the corporation and the government, is a doctrine applicable to those acting in a public capacity and to municipal corporations. But it is not suggested by the Court, in either of the cases cited, as applicable to the right to take toll. What can be put as more strongly illustrative of the law, than what is said in these

cases, as to the location of the toll house. Unless it is in the place prescribed, there is no power to exercise the franchise.

If a charter to a rail road prescribes the track to be six feet wide, and it is made but three feet, can the toll be collected? or a canal to be 50 feet wide, and it is made but 20, can the toll be collected?

If one departure may be made from the law, how many may be made, and what protection from imposition have the community, if they must wait until the charter is revoked?

If the defendant had denied their right to take toll, they might deny his right to pass, and refuse to permit it, and if he had persisted, perhaps have maintained trespass, but this action *assumes* the right to take toll, and unless it exists, the action fails.

*Commonwealth* v. *Worcester Turnpike Corp.*, 3 Pick. 327, does not appear to militate with the cases cited. The defendants were not allowed to set up their own want of duty in defence.